UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR JORDAN, SR.,<br>    *Plaintiff*,<br><br>    v.<br><br>GIFFORD et al.,<br>    *Defendants*. | Case No. 3:19-cv-1628 (CSH)<br>April 11, 2023 |

## RULING ON PENDING MOTIONS

**HAIGHT, Senior District Judge:**

*Pro se* plaintiff, Victor Jordan, a sentenced inmate currently in the custody of the Department of Correction ("DOC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against several DOC officers and nurses at MacDougall-Walker Correctional Institution and Northern Correctional Institution. Doc. 1. Following review of his complaint pursuant to 28 U.S.C. § 1915A, the Court permitted Jordan to proceed on Eighth Amendment claims of excessive force and deliberate indifference to his medical needs; Fourteenth Amendment claims concerning his placement in administrative segregation; and state law claims of assault and battery. Doc. 11. On August 4, 2022, the Court granted Defendants' Motion for Summary Judgment on all claims except Plaintiff's claims of Eighth Amendment excessive force and state law assault and battery. Doc. 69.

After an unsuccessful attempt to resolve this case through settlement negotiations, the following motions filed by Plaintiff remain pending: Motion for Prejudgment Remedy [Doc. 98], Motion for Prejudgment Disclosure of Property and Assets [Doc. 101], Renewed Motion for Reconsideration [Doc. 110], Motion for Extension of Time to Amend his Motion for Prejudgment

Remedy [Doc. 112], and Motion for Addendum to his Motion for Prejudgment Remedy [Doc. 114]. The Court now decides these pending motions.

## DISCUSSION

The Court assumes the Parties' familiarity with the factual circumstances of the case and the present motions, and therefore shall only briefly review them here, in part drawing from the Court's previous orders in this case. *See, e.g.*, Doc. 69 (available at *Jordan v. Gifford*, No. 3:19-CV-1628 (CSH), 2022 WL 3106965 (D. Conn. Aug. 4, 2022) (ruling on Motion for Summary Judgment)); Doc. 11 (initial review order).

**A. Renewed Motion for Reconsideration**

On August 4, 2022, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. *See generally* Doc. 69. The Court held that disputed issues of fact precluded entry of summary judgment on Plaintiff's claims of Eighth Amendment excessive force and state law assault and battery. Doc. 69 at 35–39. However, the Court determined that Plaintiff had failed to exhaust (1) his Eighth Amendment claims against the correctional staff defendants concerning application of in-cell restraints and their alleged failure to provide him with adequate decontamination after his exposure to the chemical agent; and (2) his Eighth medical indifference claims based on inadequate or delayed decontamination; lack of medical treatment for a concussion, black eye, and busted lip; lack of mental health treatment; failure to record his injuries by any medical defendant (other than Scott); and Nurse Kilham's failure to investigate RN Mushi's conduct. *Id.* at 22–24. Exhaustion of these claims is required by the Prison Litigation Reform Act ("PLRA"). *Id.* The Court concluded further that Plaintiff could not prevail on the merits of (1) his exhausted medical indifference claims; (2) his supervisory liability claims against Defendants Kilham and

2

Mudano; and (3) his Fourteenth Amendment procedural due process claims. *Id.* at 39–53. In addition, under 28 U.S.C. § 1915(e))2)(B)(i)–(iii), the Court dismissed Plaintiff's Eighth Amendment indifference claims related to his genital treatment needs. *Id.* at 46–47.[1] On September 15, 2022, Plaintiff filed a self-styled "Motion to Amend and Correct Re: Summary Judgment Ruling, His Objection and Reconsideration" (the "Motion for Reconsideration"). Doc. 81. On October 6, 2022, Defendants filed a response to that motion. Doc. 84. On October 19, 2022, Plaintiff filed his reply to Defendants' response. Doc. 86.

On November 22, 2022, at Plaintiff's request and with consent of Defendants, the Court referred this matter for a settlement conference. The Court denied Plaintiff's pending motions, including his First Motion for Reconsideration, without prejudice to renewal if the settlement negotiations failed. Docs. 92, 93. After the Magistrate Judge overseeing settlement entered a minute entry stating that further settlement discussions would not be fruitful [Doc. 105], Plaintiff filed a motion entitled "Renewed Motion for the Reconsideration Re: Doc. #81, #86, Objection, Amend" (the "Renewed Motion for Reconsideration") on January 12, 2023. Doc. 110. Plaintiff therein renews his Motion for Reconsideration of the Court's ruling on summary judgment. *See* Doc. 110 at 1.

Plaintiff objects to the Court's decision "pertaining to Deliberate Indifference, claim pertaining to custody as well as Medical Dep't not properly decontaminating Plaintiff of the . . . Chemical Agent (Aka. Pepper Spray)." Doc. 110. In his motion to amend and correct [Doc. 81],

---

[1] On September 13, 2022, the Court entered an order denying Plaintiff's motion to compel and for sanctions, denying Plaintiff's motion to disqualify the attorney general from representation of the Defendants, and granting Defendants' motion for the Court to correct its clerical error regarding the date of a prison video referenced in the Court's ruling on the Motion for Summary Judgment. Doc. 80.

Plaintiff challenges the Court's ruling concerning his failure to exhaust his administrative remedies in compliance with the PLRA. [2] *See* Doc. 81 at 2; Doc. 86.

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the Court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)). In accordance with this standard, this District's Local Civil Rule 7(c) dictates that a motion for reconsideration "shall satisfy the strict standard applicable to such motions" and "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)(1). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

### 1. Exhaustion Under the PLRA[3]

The PLRA "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

---

[2] Plaintiff does not challenge the Court's ruling concerning his non-exhaustion of his Eighth Amendment claims based on the use of in-cell restraints. Although Plaintiff primarily challenges the Court's determination that he failed to exhaust his Eighth Amendment deliberate indifference claims based on improper contamination, it is unclear whether he also seeks reconsideration of his other medical indifference claims. *See* Doc. 81 at 2. Accordingly, the Court reviews its ruling relevant to his decontamination and medical indifference claims. To the extent that Plaintiff seeks reconsideration of the Court's order (Doc. 80) dated September 13, 2022, Plaintiff has not shown that the Court overlooked any matter that might reasonably be expected to alter the Court's decision.

[3] This ruling incorporates herein the legal standards for PLRA exhaustion and the administrative remedy provisions of Administrative Directives 9.6 or 8.9 stated in the prior ruling on the Motion for Summary Judgment. Doc. No. 69 at 22-31.

"Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." *Id.* at 90. A prisoner grievance must therefore provide notice of the factual basis of the claim to afford the agency that opportunity. *Id.* Indeed, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).

A plaintiff must therefore exhaust his claims through agency adjudication unless such remedies are unavailable. *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). Unavailability occurs (1) "when (despite what regulations or guidance materials may promise) [the grievance procedure] operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In this case, Plaintiff was obligated to exhaust his Eighth Amendment claims against custodial officials through the procedures set forth under Administrative Directive 9.6 ("A.D. 9.6"). *See Wilson v. McKenna*, 661 F. App'x 750, 753 (2d Cir. 2016) (affirming district court's dismissal based on inmate's failure to exhaust his claim against correction officer for deliberate indifference to medical needs under Administrative Directive 9.6).

Plaintiff references his verbal or inmate requests about his injuries sustained on May 30, 2019, but such informal notice of his complaints are not sufficient to satisfy PLRA exhaustion. *See Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). Thus, the Court reviews Plaintiff's grievances

filed under Administrative Directives 9.6 and 8.9 to determine whether he satisfied his PLRA exhaustion requirement.

### a. Exhaustion of Improper Decontamination Claims under Administrative Directive 9.6(6)

In ruling on summary judgment, the Court determined that Plaintiff had not exhausted his Eighth Amendment claims against custody staff for improper decontamination. Doc. 69 at 28–29. In so deciding, the Court thoroughly reviewed Plaintiff's Level-1 and Level-2 Grievances filed under Administrative Directive 9.6. *Id.* at 26–29.

Plaintiff filed a timely Level-1 Grievance under Directive 9.6(6) on June 28, 2019 to complain of correctional staff's use of excessive force on May 30, 2019, which stated:

> This grievance is in regards to correctional officers not following protocol and procedures in extracting inmate from cell & on the use of force to restrain and secure inmate concerning incident that took place in MacDougall O-Unit 29-cell on May 30, 2019 at approx. 8:15 p.m. and outside cell in route to RHU. A C/O Foutain entered Cell 29 while inmate was present in cell alone & naked. C/O entered cell without supervising officer & or video camera present. He came in the cell with the intent to assault me because he came in swinging his fist striking me several times before I restrained his hands and he slipt on clothing. Other C/Os responded and joined in the assault on my person. I recognized C/O Petterson run into cell after other unknown C/O was choking me from behind. Petterson starts to punch me in the face while other C/O held my neck and right arm behind my back then officer Petterson started punching me in my ribs left side under my left "pectoral" several times as if to brake them. Other C/Os came into cell and continued to assault and batter me as I was turned on my stomach with hands secure oc spray was applied to my face, and then I was sexually assaulted in my anus by someone with their finger while I was still being assaulted with hands and feet. Then oc spray was activated on my genitals and anus area. And while in route to RHU I was slammed against wall wrist twisted so as to brake. I want all officers involved terminated from Job: DOC.

Doc. 86-2 at 23–24. After this Level-1 Grievance was denied, Plaintiff filed a Level-2 Grievance complaining about correctional staff entering his cell "to do bodily harm to [his] person . . . to abuse [him] with excessive force & sexual assault." *Id.* at 25. Plaintiff's Level-2 Grievance was also denied. *Id.*

6

Plaintiff now argues that his grievances under Administrative Directive 9.6(6) were sufficient to exhaust his claims of improper decontamination because he referred to his "oc spray" exposure. Doc. 86 at 7, 21 (Special Management Appeal); 23 (Disciplinary Appeal). But neither Plaintiff's Level-1 Grievance dated June 28, 2019, nor his Level-2 Appeal filed under Directive 9.6(6) included any complaint or fact referencing his improper decontamination. Absent facts sufficient to alert DOC officials of custodial staff failures with regard to Plaintiff's decontamination, these Level-1 and Level-2 Grievances under Directive 9.6(6) cannot satisfy his PLRA exhaustion requirement for his improper decontamination claims against custody staff. *See Johnson*, 380 F.3d at 697.

Plaintiff asserts that he exhausted his administrative remedies through his administrative segregation appeal under Directive 9.6(8) and his disciplinary proceeding appeal under 9.6(10). Doc. 86 at 20–23. However, Plaintiff's appeals through the steps set forth under Directive 9.6(8) and 9.6(10) do not satisfy PLRA because he was required to exhaust his Eighth Amendment claims against custody staff under all of the steps set forth under Directive 9.6(6). *See, e.g., Paschal-Barros v. Kenny*, No. 3:18-CV-1870 (VLB), 2019 WL 2720739, at *5 (D. Conn. June 28, 2019) (holding appeal challenging a finding from a disciplinary hearing satisfies exhaustion only with respect to a procedural due process claim). In addition, neither appeal included sufficient facts to provide notice to prison officials about his improper decontamination complaint.

Plaintiff also argues that he satisfied his exhaustion requirement through his grievance dated July 16, 2019, complaining about a DOC staff response to his video preservation request concerning his assault on May 30, 2019. *See* Doc. 86 at 7; Doc. 86-1 at 8. This grievance is dated more than thirty days from the date of the incident on May 30, 2019. Thus, it cannot satisfy PLRA exhaustion for his Eighth Amendment deliberate indifference claims against custody staff arising

from the assault on May 30, 2019 because Directive 9.6(6)(C) requires an inmate to file a Level-1 grievance no later than thirty calendar days from the date of the occurrence or discovery of the cause of the grievance.[4] *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

After thorough review of Plaintiff's arguments, the Court concludes that Plaintiff has not demonstrated that the Court erred by overlooking any record evidence or relevant law showing that he exhausted his administrative remedies for his Eighth Amendment improper decontamination claims against custody staff under Directive 9.6(6). To the extent that Plaintiff claims he should be excused from exhausting his administrative remedies under Directive 9.6(6) due to unavailability as contemplated by *Ross* (Doc. 86 at 8-0), the record shows that Plaintiff clearly had access to and was able to file administrative remedies under Directive 9.6. *See Schebell v. Erfe*, No. 3:20-CV-1259 (VAB), 2022 WL 17551467, at *9 (D. Conn. Dec. 9, 2022) (noting plaintiff's grievance filing demonstrated availability of administrative remedies).

### b. Failure to Exhaust Medical Indifference Claims under Administrative Directive 8.9

The Court also granted Defendants' Motion for Summary Judgment on the ground that Plaintiff had not exhausted his remedies under Directive 8.9 for his Eighth Amendment medical indifference claims concerning his improper decontamination; lack of treatment for a concussion, black eye, busted lip, and mental health; and certain staff member misconduct related to falsification of his medical record and Nurse Kilham's failure to investigate RN Mushi's conduct. Doc. 69 at 33–34.

---

[4] Plaintiff cannot plausibly claim that he was not aware of his own allegedly improper decontamination after his exposure to the chemical agent.

The relevant version of Administrative Directive 8.9 provides for two types of Health Services Review ("HSR"): (1) Diagnosis and Treatment, which include a decision not to provide treatment; and (2) Review of an Administrative Issue, which addresses concerns of "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." A.D. 8.9(9)(A)–(B). Directive 8.9 provides distinct procedures for each of the two HSRs. *See* A.D. 8.9(11) & (12).

Jordan maintains that his HSRs were sufficient to exhaust his Eighth Amendment medical deliberate indifference claims. Doc. 81 at 2–3; Doc. 86 at 6–7.

Plaintiff filed an HSR (checking the box for Diagnosis and Treatment) dated June 13, 2019, which stated:

> Medical failure to diagnose and treat injuries th[at] I suffered on May 30, 2019 at McDougal CI in Incident w[h]ere I was assaulted by multiple c/os[.] My ribbs was damaged as well as my left foot ankle my wrist w[h]ere I suffered gash from cuffs bruises, nerve damage possibly as well as an assault to my Genital area. I informed medical at McDougall prior to my leaving … of all the above. My injuries were disregarded and I was left to suffer in excruciating pain. Nothing was documented of said injuries. I had to go on a Hunger Strike to get a minimum of medical treatment and still I have yet to receive proper treatment. I have made it clear that I want MRI done on said injuries that are still causing pain and discomfort after 14 days.

Doc. 81 at 14–15. He received a disposition from Dr. Clements on July 2, 2019, stating "[c]hange made to treatment plan." *Id.* This HSR for diagnosis and treatment specified that he had informed medical staff of his injuries to his ribs, ankle, wrist, and genital area and that he needed treatment and an MRI for "said injuries." But the HSR failed to include sufficient facts to alert a DOC medical official that he complained of his treatment needs in connection with his improper decontamination, concussion, busted lip, black eye or mental health needs. Accordingly, this HSR did not satisfy exhaustion for his Eighth Amendment claims arising from these conditions.

Nor could this HSR, filed under Directive 8.9(9)(11) for issues with diagnosis and treatment, exhaust Plaintiff's remedies for his complaints about medical staff falsification or failure to investigate, because staff misconduct issues must be exhausted through an HSR for review of an administrative issue under Directive 8.9(12). *See Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement."); *Jordan v. Cook*, No. 3:20-CV-00491 (VAB), 2022 WL 743045, at *9 (D. Conn. Mar. 11, 2022) (noting that plaintiff's claims should have been asserted by filing an HSR regarding "All Other Health Care Issues.").

Plaintiff filed another HSR (checking both the boxes for "All Other Health Care Issues" and "Diagnosis and Treatment) dated July 16, 2019; it complained:

> I have been suffering in pain for close to two months from Incident that occurred on May 30, 2019 w[h]ere I was assaulted by D.O.C. staff. I have informed medical of my pain and anguish and have to receive proper medical care. On July 2, 2019, "Doctor Clements" prescribed new treatment plan. I was told that I would receive pain medication. I have yet to receive. My throat neck is still in pain as well as my feet, ankle etc. my left rib cage area and my wrist and hands my hand has nerve damage that I have informed of and has yet to be diagnosed. I believe that medical department is in cahoots with D.O.C. Admin. To cover up said injuries that I suffered from the use of excessive force. This observation is based on the lack of treatment from the start. I want proper medical care for all the above!"

Doc. No. 81 at 16–17. Dr. Clements returned the HSR indicating that orthopedic and neurological appointments had been submitted, and that "medication, x-ray, and follow-up visits" had been ordered. *Id.* As this HSR provided no notice that Plaintiff suffered from improper decontamination, concussion, busted lip, black eye, or mental health needs, Plaintiff did not afford DOC officials the opportunity to address those concerns. Accordingly, this HSR was not sufficient to exhaust Plaintiff's claims about deliberate indifference to those conditions.

To the extent that this grievance can be construed to raise Plaintiff's claims about staff misconduct, section 9 of Directive 8.9 specifically provides for two separate types of HSRs and

10

Directive 8.9(12) sets forth the procedural steps for exhausting an HSR for review of an administrative matter. Thus, Plaintiff was not properly using all steps under Directive 8.9 when he filed one HSR to complain about both medical treatment and staff misconduct. *See Woodford*, 584 U.S. at 83 (holding that proper exhaustion is necessary for PLRA). Furthermore, even if Plaintiff's HSR properly raised his claims of medical staff misconduct, he failed to exhaust such claims by filing an appeal under Directive 8.9(12)(B). Notably, Dr. Clements did not check the box to indicate Plaintiff's exhaustion.

Another HSR (checking both the boxes for "All Other Health Care Issues" and "Diagnosis and Treatment") dated July 27, 2019, complained that RN Scott made a false medical report to cover up deliberate indifference and excessive force. Doc. 81 at 18–19. Plaintiff explained that he had made his need for medical attention clear upon intake at Northern for his "left foot ankle," "both [his] hands and wrist," and left ribs. *Id.* After Plaintiff received a disposition for this HSR informing him that he should fill out an HR 3034 form, Plaintiff filed an appeal, dated September 17, 2019, complaining about medical staff's failure to properly examine him, failure to document his injuries from the use of excessive force, and filing false reports. Doc. 86-1 at 2–3. Plaintiff received a response explaining that he could only remove a health record by filling out the form given to him. *Id.* at 20.

This HSR fails to suggest that any medical conditions other than his left foot ankle, hands and wrists, and left rib injuries were not treated or documented, or were the subject of false reports. Although this HSR may be sufficient to exhaust his claims concerning such medical staff failures regarding his left ankle, hands and wrists, and left rib injuries, the Court determined based on the medical record that Plaintiff had received medical treatment for these conditions. Doc. 69 at 44–46. Plaintiff has not substantiated any reason for the Court to alter its conclusion that no reasonable

11

jury could find that Defendants acted with deliberate indifference to Plaintiff's serious medical needs for these injuries. *Id.*

Jordan refers to the ruling on a motion for summary judgment in *Jordan v. Cook,* No. 3:20-CV-00491 (VAB), 2022 WL 743045 to support his argument that his medical grievances were sufficient to exhaust his claims of deliberate indifference for all of his treatment complaints. *See* Doc. 86 at 2. In *Jordan v. Cook,* the Court considered whether Plaintiff exhausted his Eighth Amendment claims arising from allegedly inhumane conditions in Northern's Administrative Segregation, which included failure to provide adequate medical and mental health care for Administrative Segregation inmates and adequate medical care for his injuries sustained on May 30, 2019. *Jordan*, 2022 WL 743045, at *8. (Plaintiff did not specify his injuries, with the exception of a burning sensation in his genital area due to the chemical agent exposure. *Id.*). *See also Jordan v. Cook,* No. 3:20-CV-00491 (VAB), Doc. 7 at 6–7, 14; Initial Review Order, Doc. 7 at 2–3; Complaint, Doc. 1 at ¶¶ 4, 42, 44, 47.

The Court determined, after a review of Plaintiff's HSRs complaining about his medical care for his injuries sustained on May 30, 2019, that Plaintiff had sufficiently exhausted his Eighth Amendment claims that he had not been provided with adequate medical treatment for injuries sustained on May 30, 2019, although he failed to exhaust his claims of inadequate medical and mental health services for Administrative Segregation inmates. 2022 WL 743045 at *9.[5] Thus, in *Jordan v. Cook*, Plaintiff did not assert claims of medical deliberate indifference for specific injuries sustained from the alleged assault on May 30, 2019, and therefore, the Court's ruling in that case does not alter the Court's decision regarding Plaintiff's non-exhaustion in this matter.

---

[5] The Court determined that Plaintiff had not demonstrated that any of the supervisory defendants were involved with his medical care and granted summary judgment on the claims. *Id.*

Plaintiff also claims that his administrative remedies under Directive 8.9 were unavailable. Doc. 86 at 8–10. But the record shows that Plaintiff filed HSRs under Directive 8.9 related to his injuries after the asserted staff assault on May 30, 2018, although he failed to include facts to provide sufficient notice to alert DOC officials of his complaints about improper decontamination, concussion, busted lip, black eye, mental health needs. The record also shows that Plaintiff received dispositions for these HSRs. As the record is replete with documentation of Plaintiff's ability to file HSR, so as to exhaust his remedies under Directive 8.9, the record affords no suggestion that his failure to exhaust should be excused because his remedies were unavailable as contemplated by *Ross*, 578 U.S. at 642–44. *See Schebell v. Erfe*, No. 3:20-CV-1259 (VAB), 2022 WL 17551467, at *9.

**2. Deliberate Indifference**

To the extent that Plaintiff did exhaust his administrative remedies in the instant matter for deliberate indifference to his treatment needs arising from improper decontamination, concussion, busted lip, black eye, and mental health needs through his HSRs under Directive 8.9, the evidentiary record raises no inference of medical deliberate indifference. Plaintiff was assessed by prison medical staff; was seen by medical doctors and mental health professionals; was provided with diagnostic tests, bacitracin, and pain medication; and refused to have his genital area assessed by medical staff despite being informed that his refusal would result in not being provided with any ointment.[6] Doc. 69 at 6–7, 11, 13–15, 44–47. In addition, the medical record shows that Dr. Clements requested Utilization Review Committee approval for Plaintiff to undergo EMG/Nerve conduction for his "nerve/neurological disorder" due to "persistent numbness in right wrist. *Id.* at 15.

---

[6] Plaintiff represents that he required treatment for the sensitivity of his genital skin due to the failure to provide him with proper decontamination. Doc. 86 at 7.

13

Accordingly, as the Court's ruling on the Motion for Summary Judgment concluded, no reasonable jury could find based on this record that Defendants acted with deliberate indifference to Plaintiff's serious medical needs for his injuries sustained from the assault on May 30, 2019. *Id.*[7]

In sum, the Court has afforded Plaintiff reconsideration of its ruling on summary judgment but adheres to its previous decision that summary judgment was proper on Plaintiff's Eighth Amendment claims based on improper decontamination and medical indifference.

### B. Motion for Prejudgment Remedy

On December 14, 2022, Plaintiff filed his Motion for Prejudgment Remedy and his Motion for Prejudgment Disclosure of Property and Assets. Doc. 98, Doc. 101. On January 25, 2023, Defendants filed their objection to Plaintiff's Motion for Prejudgment Remedy and his Motion for Prejudgment Disclosure of Property and Assets on the ground that Plaintiff's Motion for Prejudgment Remedy failed to comply with Connecticut General Statutes § 52-279c. Doc. 111.

On February 10, 2023, Plaintiff requested a Motion for Extension of Time to file materials to comply with section 52-278c. Doc. 112. Defendants filed an objection to Plaintiff's Motion for

---

[7] Moreover, temporary injuries such as a black eye or busted lip are generally not considered serious medical conditions of a constitutional dimension. *Louime v. Lamanna*, No. 21 CV 9594 (VB), 2023 WL 1385180, at *6 (S.D.N.Y. Jan. 31, 2023) (noting that "bruising, lacerations to the head and face, pain, and blurry vision" constitute "minor, temporary injuries" that are not considered serious medical needs "as a matter of law"); *see also Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) ("[T]he failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection" but not "where the alleged lapses in treatment are minor and inconsequential.").

As the Court noted in ruling on summary judgment, Plaintiff's dissatisfaction with his medical treatment is not sufficient to support a claim of an Eighth Amendment violation. *See* Doc. 69 at 45 (citing cases). With respect to Plaintiff's supervisory liability claims against Kilham and Mudano, the Court explained that "allegations that a supervisor did not do enough after a constitutional violation had already occurred [are] not enough to show personal involvement of the supervisor in the violation of a prisoner's constitutional rights" and that the medical record did not substantiate Plaintiff's assertion that he lacked treatment responsive to his medical needs. Doc. 69 at 48 (citing cases). To the extent that Plaintiff's renewed motion seeks reconsideration of the Court's rulings on the merits or its dismissal of Plaintiff claims concerning his genitals, Plaintiff has not demonstrated that the Court overlooked any relevant law or evidence. *See* Doc. 69 at 39-49.

Extension of Time, arguing that the Court should deny the Motion for Prejudgment Remedy without prejudice to refiling a corrected motion. Doc. 113. On February 22, 2023, Plaintiff filed a Motion to File Addendum with attached materials to supplement his Motion for Prejudgment Remedy dy. Doc. 114. Defendants have filed a response indicating that they defer to the Court in considering Plaintiff's addendum materials. Doc. 115.

Federal Rule of Civil Procedure 64 permits a plaintiff to use the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 436, n.10 & 437 (1974); *Dill v. Ron's Golf Car Rental, Inc.*, No. 3:12-CV-137(JBA)(JGM), 2013 WL 275690, at *8 (D. Conn. Jan. 24, 2013).

"Under Connecticut law, a prejudgment remedy is appropriate if the court, 'upon consideration of the facts before it and taking into account any defenses, counterclaims or setoffs . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought[.]'" *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) (quoting Conn. Gen. Stat. § 52-278d(a)). Thus, "[a] prejudgment remedy may be obtained when the plaintiff establishes that there is probable cause to sustain the validity of his claims." *Davila v. Secure Pharmacy Plus*, 329 F. Supp. 2d 311, 313 (D. Conn. 2004) (citing Conn. Gen. Stat. § 52-278d). Section 52-278c(a) requires that an affidavit in support of a prejudgment remedy set forth "facts sufficient to show that there is probable cause" that a judgment will enter in an amount equal to or greater than the amount of the prejudgment remedy sought, "taking into account any known defenses, counterclaims or set-offs[.]"[8]

---

[8] Section 52-278b of the Connecticut General Statutes provides that "no prejudgment remedy shall be available to a person in any action at law or equity (1) unless he has complied with the provisions of sections 52-278a to 52-278g[.]" Conn. Gen. Stat. § 52-278b. Section 52-278c sets forth the required documents that must be filed in connection with an application for a prejudgment remedy, and the required notice that must

*Id.* Such a remedy is available only if a plaintiff shows probable cause to conclude that judgment will be rendered in his favor. *See Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) (quoting Conn. Gen. Stat. § 52-278d(a)).

Connecticut General Statutes § 52-278n(c) provides that a disclosure of property can be ordered only after the court "has determined that the party filing the motion for disclosure has, pursuant to section 523-278d, 52-278e, or 52-278i, probable cause sufficient for the granting of a prejudgment remedy."

**1. Extension of Time and Motion to File Addendum**

As an initial matter, the Court grants Plaintiff's Motion for Extension of Time [Doc. 112] to amend his Motion for Prejudgment Remedy and his Motion to File Addendum to his Motion for Prejudgment Remedy (Doc. 114). Thus, the Court's consideration of whether Plaintiff has established probable cause to warrant a prejudgment remedy includes review of Plaintiff's materials submitted with his addendum. *See* Doc. 114-1.

**2. Probable Cause**

The Court denied Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claims based on his physical and sexual assault because unresolved questions of fact remained as to (1) whether Defendants' conduct violated "contemporary standards of decency,"

---

be served upon a defendant. Conn. Gen. Stat. § 52-278c. Except in instances inapplicable here, an application for a prejudgment remedy must be accompanied by an "affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought[.]" Conn. Gen. Stat. § 52-278c(a)(2). The application must also include order and summons forms. Conn. Gen. Stat. § 52-278c(a)(3) & (4) and (b). Further, section 52-278c "requires that a notice and claim form containing specific language be attached to the application for prejudgment remedy." *Davila*, 329 F. Supp. 2d at 314 (citing Conn. Gen. Stat. § 52-278c(e), (f), and (g)).

16

and (2) whether Defendants acted "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Doc. 69 at 38–39; *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992) (citation omitted). The Court noted that Plaintiff's related state law claims of assault and battery survived for essentially the same reasons. Doc. 69 at 38–39.

In support of his Motion for Prejudgment Remedy, Plaintiff submits his declarations about the incident on May 30, 2019, his statement to the state police about the May 30 incident, and declarations from other inmates about alleged assaults and mistreatment by correctional staff. Doc. 114-1. These materials support the existence of disputed issues of fact about whether Defendants should be liable for Eighth Amendment misuse of force and state law assault and battery, but they fall short of establishing probable cause that his claims will succeed on the merits.

Moreover, Defendants have asserted as affirmative defenses qualified immunity and authorization to use physical or deadly force under federal and state law. Doc. 37 at 20.[9] Thus, even if Plaintiff could establish that the standard of probable cause was met for his Eighth Amendment misuse of force or state law assault and battery claims, the existence of Defendants' asserted affirmative defenses weighs against the imposition of a prejudgment remedy against these defendants, as a valid defense would defeat Plaintiff's claims on the merits. *TES Franchising LLC v.*

---

[9] "A federal official is entitled to qualified immunity from suit for money damages unless the plaintiff shows that the official violated a statutory or constitutional right, and that the right was clearly established at the time of the challenged conduct." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation and internal quotations omitted). "So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (citation and internal quotations omitted).

With respect to the latter defense, under DOC Administrative Directive 6.5, correctional officers "may immediately use force . . . when an inmate's behavior constitutes an immediate threat to self, others, property, order or the safety and security of the facility." A.D. 6.5(4)(d). The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information). DOC's administrative directives are public records accessible at the following website: https://portal.ct.gov/DOC/Common-Elements/Common-Elements/Directives-and-Polices-Links (last visited April 4, 2023).

*Feldman*, 943 A.2d 406, 413 (Conn. 2008) ("Section 52-278d(a) requires only that the trial court *take into account* any defenses and counterclaims." (emphasis in original)). Accordingly, the Motion for Prejudgment Remedy and Motion for Prejudgment Disclosure of Property and Assets will be denied.

## CONCLUSION

For the foregoing reasons, the Court enters the following orders.

1. Plaintiff's Motion for Prejudgment Remedy [Doc. 98] and Motion for Prejudgment Disclosure of Property and Assets [Doc. 101] are **DENIED**.

2. Plaintiff's Renewed Motion for Reconsideration [Doc. 110] is **GRANTED**. However, the Court adheres to its previous decision to grant the Motion for Summary Judgment on Plaintiff's Eighth Amendment claims based on improper decontamination against custody staff and deliberate indifference to his medical needs.

3. Plaintiff's Motion for Extension of Time to Amend his Motion for Prejudgment Remedy [Doc. 112] is **GRANTED**.

4. Plaintiff's motion for addendum to his motion for prejudgment remedy [Doc. 114] is **GRANTED**.

5. The Court will decide Plaintiff's Renewed Motion to Appoint Counsel [Doc. 109] separately.

6. The case shall thus proceed to trial on Plaintiff's surviving Eighth Amendment excessive force claims and his state law assault and battery claims. The deadlines for the joint trial memorandum and trial readiness were stayed on September 19, 2022, pending resolution of the motions decided herein. The Parties are **ORDERED** to meet and

confer to discuss a revised schedule, and to file a proposed schedule with the Court, by **May 12, 2023**.

It is SO ORDERED.

Dated at New Haven this 11th day of April 2023.

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge